FILED

2005 Feb-25  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CLARAETTA MOORE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **7:03-cv-3200-UWC** |
| **UNIVERSITY OF ALABAMA** | ) | |
| **BOARD OF TRUSTEES,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Claraetta Moore initiated the present action against her employer, the

University of Alabama Board of Trustees ("University"). Plaintiff alleges claims of

disparate treatment and racial discrimination regarding job requirements, promotions,

evaluations, assignments and wages, in violation of 42 U.S.C. § 2000e *et seq.* ("Title

VII").

This matter is before the Court on Defendant's Motion for Partial Summary

Judgment. (Doc. 17)  Based on the undisputed facts, the Court finds that the University's

Motion for Partial Summary Judgment is due to be GRANTED in part and DENIED in

part.  The University's Motion For Partial Summary Judgment is due to be granted on

1

Moore's Title VII promotion claim.  The University's Motion For Partial Summary

Judgment is due to be denied on Moore's Title VII wage claim.[1]

## I.  FACTS

Plaintiff Claraetta Moore ("Moore") is an African-American female who held

several positions at the University from approximately 1993 - 2000.  In May 2000, Moore

was transferred to the University's Benefits Office as a Benefits Coordinator at a rate of

pay of $11.18 per hour.  (Pl. Ex. B, Transfer of Claraetta Moore; Def. Ex. K, UA-

000165).

### A.  Moore's Denial of the Benefits Specialist Position

In January 2001, Polly Bailey ("Bailey"), a white female, announced her retirement

from the position of Benefits Specialist.  (Def. Ex. I, ¶ 4).  Moore applied for Bailey's

position of Benefit Specialist, but was not interviewed or hired for that position.  (Pl. Ex.

A, Moore Dep. at 26-28).  Moore was told that the Benefits Specialist position required a

college degree.  (Pl. Ex. A, Moore Dep. at 28).  Moore had not completed her college

degree.  (Pl. Ex. A, Moore Dep. at 26).

In January 2002, Linda House ("House"), a white female, was hired for the

position of Benefits Specialist.  (Pl. Ex. D, Abrams Dep. at 36).  House had previous

experience in employee benefits at other universities and in the private sector.

### B.  Moore's 2002 Salary Increase

---

[1]In their Motion For Partial Summary Judgment, the University did not address Plaintiff's
Count II claim of retaliation, pursuant to Title VII.

In July 2002, the University determined that a 3% merit pool would be made available to "all employees eligible for merit increases."  (Pl. Ex. I, July 11, 2002 Correspondence from Interim President J. Barry Mason.)  The merit raises were to relate "directly to one's overall score on their performance evaluation." (Pl. Ex. H, August 16, 2002 Memorandum Prepared by Charlotte Harris.)  A performance evaluation score of "1" equaled "Unacceptable," "2" equaled "Needs improvement" and "3" equaled "Meets expectations-Able to perform 100% of job duties satisfactorily."  (Pl. Exs. L & O.)

In addition to merit raises, employees in the Benefits Department were to receive equity adjustments. The equity adjustments were to bring staff salaries to the minimum salary for a pay grade or to cure inequities within a pay grade.  (Pl. Ex. G, Heatherly Dep. at pp. 7-8, attachment "Department of Human Resources Guidelines.")

Moore received an overall rating of "3" On her 2002 annual performance evaluation.  (Pl. Ex L, Moore's Annual Employee Performance Evaluation.) During the review of Moore's performance evaluation, Sandra Abrams ("Abrams"), Benefits Office Manager, told Moore that she would receive a 3% merit increase.  (Pl. Ex. D, Abrams Dep. at 87.)

Abrams recommended a salary increase for Moore.   However, on August 7, 2002, Moore received a memo informing her that her raise was "a result of the implementation of the new salary structures under our revised compensation policy." (Pl. Ex. M, Memorandum to Claraetta Moore.)  As a result, Moore's hourly pay rate increased from

$11.57 to $11.90 per hour and salary increased from $23,313.55 to $23,978.50.  (Id.)

This change in Moore's rate of pay equaled a 2.8522% increase.  (Pl. Ex. N, Notification

of Rate Change.)

House, a similarly situated employee, received an overall rating of "3" on her

performance evaluation. (Pl. Ex. O, House Annual Performance Evaluation).  Abrams

recommended that House receive a salary increase.  Charlotte Harris ("Harris"), the

Benefits Office supervisor, reviewed Abrams' recommendation regarding House's salary

and increased it to $33,000, which equated to a 3% merit increase and a 5% equity

adjustment.  (Pl. Ex. E, House Dep. at 199-201.)

Moore complained to House and Gwendolyn Hood ("Hood"), the University's

EEOC Compliance Officer, regarding Moore's perceived inequities in her increase of pay

as compared to House.  (Pl. Ex. A, Moore Dep. at 61, 67-68, 73.)  Moore also reported to

Hood that Moore had been told that employees in the Benefits Department had made

racial slurs. (Pl. Ex. A, Moore Dep. at 97-100.)

On November 12, 2002, Moore filed an EEOC Charge of Discrimination with the

EEOC, alleging racial discrimination and retaliation.  (Pl. Ex. V.)  Plaintiff subsequently

filed her Amended Complaint on May 21, 2004.  Count I of the Amended Complaint

alleged claims of race discrimination "regarding evaluations, assignment of job duties,

wages, disparate application of job requirements, disparate application of the disciplinary

policy, subjecting plaintiff to a higher level of scrutiny and actual and/or constructive

4

discharge." Count II alleged claims of unlawful retaliation.

Defendant's Motion for Partial Summary Judgment addressed only Count I with regard to wages and disparate application of job requirements. Plaintiff conceded the actual and/or constructive discharge claim in Count I. Therefore, all remaining claims (evaluation, assignment of job duties, disparate application of the disciplinary policy and subjecting Plaintiff to a higher level of scrutiny) are due to withstand summary judgment. *Clark v. Coates and Clark*, 929 F.2d 604 (11th Cir. 1991).

## II.  SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c). The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits', if any, which the moving party believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, the court must view

the facts in a light favorable to the non-moving party.[2]  *See, e.g., Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir. 1997).  The Eleventh Circuit has held that evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact.  *See, e.g.*, *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

Title VII makes it unlawful for an employer to "discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII Section 706(e) requires a charging party to file and Equal Employment Opportunity Commission Charge of Discrimination within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1)(2004); *McDonnell Douglas*, 411 U.S. 792, 798 (1973).  Discrete discriminatory acts are not actionable if time barred, even when related to timely filed charges.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In reviewing Title VII claims that are supported by circumstantial evidence, the familiar *McDonnell Douglass/Burdine* three-step burden-shifting framework is used. Plaintiff's initial burden under Title VII is to show: (1) she belongs to a racial minority; (2) she applied for and was qualified for a job for which employer was seeking

---

[2] "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' . . . and draw 'all justifiable inferences . . . in his favor . . . . " *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).  "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party."  *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).

applicants; (3) rejection, despite qualification, and (4) a similarly situated non-protected

person received dissimilar treatment.  *See McDonnell Douglass v. Green*, 411 U.S. 792,

802 (1973); *Scott v. Suncoast Beverage Sales*, 295 F.3d 1223, 1228 (11th Cir. 2002).

### III.  DISCUSSION

**A.  Moore's Denial of the Benefits Specialist Position**

A charging party is required to file an EEOC Charge of Discrimination within 180

days of the alleged unlawful employment action.  Moore applied for the Benefits

Specialist position, which was filled by House in January 2002.  Moore filed her EEOC

Charge of Discrimination in November 2002, well beyond 180 days of the alleged

unlawful employment practice of not hiring Moore in January 2002.  42 U.S.C. § 2000e-

5(e)(1)(2004); *McDonnell Douglas*, 411 U.S. 792, 798 (1973).  Moore's filling of the

EEOC Charge regarding the Benefits Specialist position was untimely.  Therefore, as a

matter of law, Plaintiff's claim regarding her denial of the Benefits Specialist position is

time barred and due to be dismissed.

**B.  Moore's Wage claim**

Defendant maintains that Plaintiff cannot establish a *prima facie* case of

discrimination because Plaintiff cannot show that the University treated similarly situated

employees of other races more favorably.  Defendant asserts that Moore cannot establish

that she received less favorable treatment than House because both Moore and House

received an overall performance evaluation score of "3" and both Moore and House were

7

recommended for an 3% merit increase.  The University contends that Moore's 3% merit increase became a 2.85% merit increase due to Moore's non-exempt status and the conversion factor when loaded into the University's payroll system.  The University also stated that the other disparity between Moore and House's pay increase was due to House's equity increase to bring her salary up to a minimum level for House's pay grade.

Plaintiff argues that the 2.85% increase in Moore's salary **was not** a merit increase, and was instead a salary adjustment, as described in the memorandum sent to Moore.  Plaintiff therefore contends that Moore never received her 3% merit increase and was treated less favorably than her similarly situated co-worker, House, who received a merit increase based on the same overall performance rating as Moore.

A genuine issue of material fact exist regarding whether Moore received a merit increase.  The University endorsed merit increases for all eligible employees.  Moore received a "3," "Meets expectations-Able to perform 100% of job duties satisfactorily" on her overall performance evaluation.  However, it is clear from the evidence that Moore received only a 2.85 % pay increase.  According to the memorandum received by Moore, the 2.85 % increase was "a result of the implementation of the new salary structures under our revised compensation policy."  (Pl. Ex. M.)  The memorandum's description of the 2.85% increase is indicative of an equity increase as opposed to a merit increase.

House, a similarly situated white employee in the Benefits Department, received a "3" on her overall performance evaluation and a 3% merit increase. Therefore, a genuine

8

issue of material fact exists regarding whether Moore was treated less favorably than her similarly situated comparator, House.

### IV.  CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment regarding Plaintiff's disparate treatment/wage claim is due to be DENIED and Defendant's Motion For Summary Judgment regarding Plaintiff's disparate treatment/promotion claim is due to be GRANTED.  It shall be done by separate order.


Done this 25th day of December, 2005.




_____
U.W. Clemon
Chief United States District Judge